[Civ. No. 56376. Second Dist., Div. One. Jan. 8, 1980.]

VICTOR ALBERT KARLSON, Plaintiff and Appellant, v.
CITY OF CAMARILLO, Defendant and Respondent.

790

COUNSEL

Victor Albert Karlson, in pro. per., Carlyle W. Hall, Jr., John R. Phillips, Alletta d'A. Belin and Phillip H. Warren for Plaintiff and Appellant.

Royal M. Sorensen, City Attorney, Burke, Williams & Sorensen and Beatrice Joy Braun for Defendant and Respondent.

OPINION

KAUFMANN, J.*—This is an appeal from a judgment denying a peremptory writ of mandate sought by the appellant to set aside two amendments to the general plan of the respondent (hereinafter referred to as City) enacted pursuant to Government Code section 65000 et seq. The petition alleged that amendments 77-2 and 77-3 were inconsistent with various provisions of the general plan, citing Government Code section 65300.5 as requiring the integrated, internal consistency of a general plan.[1] Although two parcels were involved in amendment 77-3, the petition objected only to the one denominated the White parcel.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Government Code section 65300.5 provides: "In construing the provisions of this article, the Legislature intends that the general plan and elements and parts thereof comprise an integrated, internally consistent and compatible statement of policies for the adopting agency." (Hereinafter all references are to the Government Code unless otherwise indicated.)

As additional grounds for setting aside the City's action, appellant alleged a violation of section 65361[2] and violation of section 65356.[3]

After the City filed its return, the case was tried upon the affidavit of the City's planning director and affidavits of the appellant and a third person. In addition, certain exhibits were introduced by appellant, but no record was submitted of the hearing before the city council or the preliminary hearing before the planning commission, although the action of the latter was referred to in the environmental impact reports (hereinafter referred to as EIRs). Findings of fact and conclusions of law favorable to the City were rendered by the trial judge and following entry of judgment, this appeal ensued.

Amendment 77-2 was approved on October 26, 1977. It amended the land use element by changing the land use designation of a 132.5-acre parcel from an agricultural to a low density housing use for the purpose of constructing a residential subdivision of 335 units housing 1,200 persons (hereinafter referred to as the Longo parcel, although the City was the applicant.). It also amended the recreation element to create additional park sites. The acreage is south of the Ventura Freeway and adjacent to a mobile home park on the west, although separated from it by a creek. A high school is located to the north, separated from it by the freeway, and an industrial park is located to the southeast. On the southerly and easterly side of the parcel is Pleasant Valley Road. A developer had already indicated its interest in developing the parcel. It was contemplated by the City that certain design provisions would be required to mitigate noise from the road and the freeway, that appropriate dedication of land and fees be required to serve the needs of the school district (an agreement had in fact been entered into), and that school and park sites be reserved from the area specified for low density

[2]Section 65361 provides: "No mandatory element of a general plan shall be amended more frequently than three times during any calendar year which amendment or amendments may occur at any time as determined by the legislative body. This section shall not apply to the adoption of any element to the general plan."

[3]Section 65356 as it existed at the time of the adoption of 77-3 provided: "In adopting a general plan or any part or element thereof, or any amendment to such plan or any part or element thereof, which has been approved by the planning commission, the legislative body shall not make any change or addition until the proposed change or addition has been referred to the planning commission for a report and a copy of the report has been filed with the legislative body. Failure of the planning commission to report within 40 days after the reference, or such longer period as may be designated by the legislative body, shall be deemed to be approval of the proposed change or addition. It shall not be necessary for the planning commission to hold a public hearing on such proposed change or addition."

residential development. It also appears that as a condition of development the developer would be required to extend sewers to serve a designated industrial park to the north of the freeway.

A residential project was previously approved for this parcel in April 1972, but expired after three extensions without construction. The general plan land use element adopted in May 1975 indicated agricultural land use for the parcel. In October 1976 the planning staff recommended no change in the status of the area with reevaluation in a year; however, the planning commission recommended a substantial portion of the area for low density residential use. In December 1976 the city council, on a proposed amendment to the general plan, referred the matter back to the commission for consideration of the entire spectrum of possible uses and alternative densities. In January 1977 the commission considered 12 alternative plans and recommended substantially the same portion for low density housing. The city council adopted an alternative plan which is challenged in this litigation.

Amendment 77-3 was adopted December 28, 1977. It amended the land use element by changing the designation of 10 acres from agricultural to commercial (hereinafter designated as the White Parcel since the applicant and prospective developer is White). Also included was a second parcel of some 14.75 acres from rural to low density residential (applicant Byerly), but the merits of this action are not challenged and its relevancy is only to the issue involving section 65361. The White parcel is also located south of the freeway and directly opposite to the Longo parcel. It is separated from the Longo parcel by Pleasant Valley Road. The commercial development contemplated is to be unique in character as a freeway-oriented shopping center providing a retail outlet for agricultural products raised on the subject property. Except for the Longo parcel, it is surrounded by agricultural land and it is contemplated that such land would remain agricultural.

The White parcel was before the city council along with the Longo parcel in December 1976. Unlike Longo, the request originally was denied because of potential for an excess of commercially zoned land in the vicinity. When amendment 77-3 was adopted, the city council quite clearly indicated the nature of its change of direction and why in the following recitals: "WHEREAS, the Planning Commission in considering the commercial designation concluded that the change to a commercial usage was consistent with goals established under the General Plan

which states it should not be a duplication or further expansion of the general retail centers, but be designed and relate to a tourist-oriented facility which could include restaurants and service type facilities geared toward the motoring public and the sales of items and wares and merchandise either grown or manufactured and would relate to a tourist industry; and,

"WHEREAS, the designation of a commercial center shall be reviewed at the time of submittal of the development plan in relation to actual uses to insure the general objectives as set forth under the Commission resolution being adhered to and not simply the establishment of an additional commercial center; and,

"WHEREAS, the Planning Commission indicated that the areas surrounding the commercial area should be retained in agricultural usage and recommended rezoning of the property to be consistent with the General Plan to an AE, agricultural exclusive, zone designation which was concurred with by the applicant for the commercial center;..."

Each amendment was the last step of the required procedure, which included preparation and certification of EIRs, noticed public hearings before both the planning commission and the city council, and approval by each body.

## CONTENTIONS

On appeal three contentions are raised: (1) the City failed to comply with section 65300.5 because the amendments were internally inconsistent with the provisions of the general plan; (2) the City violated section 65361 in adopting amendment 77-3 because it exceeded the maximum permissible number of annual amendments; (3) the City violated section 65356 in adopting amendment 77-3 because in deleting one of the submitted proposals of the planning commission and adopting the remaining two, it had "changed" the proposal and was required by the section to return the entire matter to the planning commission for its consideration in the light of the deletion. We hold that none of these positions are supported by the law or the record produced by the appellant.

SCOPE OF REVIEW

The reference to section 65300.5 is more complicated than the rather simple manner in which the contention is set forth by the appellant. The underlying issue raised by him is the scope of judicial review applicable to these amendments. The scope of review itself turns on whether the action of the city council is determined to be quasi-legislative or quasi-judicial, as these terms have been defined in judicial decisions. ■ Actions taken by an administrative agency in its legislative capacity are reviewable under Code of Civil Procedure section 1085, the traditional writ of mandate. Judicial review is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary or capricious, or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give the notices required by law. (*Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].)

■ Review of actions taken by an administrative agency which is required by law to hold a hearing and perform quasi-judicial functions is under Code of Civil Procedure section 1094.5. In this case, it is agreed that if the action reviewed is determined to be quasi-judicial, the review is limited to whether the findings of an agency are supported by substantial evidence in the light of the whole record.[4] Under either approach appellant seeks to introduce section 65300.5 as a statutory standard of review superimposed upon the well established rules of review.

The case of *Dale* v. *City of Mountain View,*, 55 Cal.3d 101 [127 Cal.Rptr. 520], is dispositive of the question of scope of review. In that case the court was presented with declaratory relief cause of action attempting to challenge an amendment to a general plan which had the effect of restricting the plaintiff's use of its property to open space, and thus it was alleged that this precluded its development for residential use. There was no allegation of procedural defect in the adoption of the amendment. The appellate court held that a demurrer to the cause of action for review was properly sustained without leave to amend. The

---

[4]In the instant case, the applicant failed to present a certified record. If this were a hearing under Code of Civil Procedure section 1094.5, the writ could have been denied on this ground. (*Fickeisen* v. *Civil Service Com.*, 98 Cal.App.2d 419, 421 [220 P.2d 605].) While the record may not be complete, no objection has been voiced to the documents presented, and they appear to be sufficient to provide a review under Code of Civil Procedure section 1085.

court relied upon the holding of the Supreme Court in *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110, at pp. 117-118 [109 Cal.Rptr. 799, 514 P.2d 111], that the adoption of a general plan is a legislative act, the wisdom of which is within the legislative not judicial sphere. The rationale was that no action had been taken with respect to the plaintiff except that which affected all citizens. Because the potential effect of the plan is tentative and subject to change and dependent upon unpredicatable future events, these circumstances did not admit of definitive and conclusive judicial relief. The court noted that if the county took future action in such manner as actually to affect the plaintiff's free use of his property, the validity of such action could be challenged at that time. In *Dale* the court stated that this identical reasoning applied to the amendment before it.

The thrust of appellant's argument does not relate to the relative merits of the proposed uses of the respective parcels. As he himself states his position: "The inconsistency question is the major issue of this suit." He thus places himself in the policy area for his challenge. The record shows that throughout the history of the consideration of these amendments, the city council's concern was with their effect on the community as a whole. Its dominant concern was how to integrate this difficult area into the City's total program, including considerations of residential development, schools, open spaces, agricultural development, and commercial and economic development. This characterizes the proceedings as legislative in character. (Cf. *City of Rancho Palos Verdes* v. *City Council,* 59 Cal.App.3d 869, 884-885 [129 Cal.Rptr. 173].)

The situation is no different in the context presented here than if the city council in adopting the general plan had not indicated the area as designated for agricultural use rather than residential use, the zoned use at the time of the adopting, or special commercial use.

Nor is it significant that an area happens to be owned by one entity. The general plan contains a number of instances where specific parcels were considered for a use consistent with their current use. The smaller the community, the more accentuated this situation becomes. It is the nature of the agency's action which controls, not the size or ownership of any parcel which may consequentially be affected.

*Dale* was a much stronger case for the plaintiff there than is the situation for appellant here. There the plaintiff's concern was direct and

personal as an owner of property which he claimed was affected by the action of the county. Here there is no comparable situation in this respect since appellant's statements indicate his standing is as a concerned citizen and taxpayer who served on two successive citizen advisory groups organized by the city council to participate in the development of the general plan. While his standing to petition is not challenged (*Pitts* v. *Perluss,* 58 Cal.2d 824, 829 [27 Cal.Rptr. 19, 377 P.2d 83]), nevertheless his position emphasizes the legislative character of the action taken, and when that action results in future action which infringes upon personal or proprietary rights, that is the time for a person aggrieved by such action to assert his or her rights to quasi-judicial review.[5]

The case of *Mountain Defense League* v. *Board of Supervisors,* 65 Cal.App.3d 723 [135 Cal.Rptr. 588], does leave open the question of scope of review of a general plan amendment. However, the court indicated no prior decision as to the type of review required in such a situation had been brought to its attention. *Dale* had been decided the prior year and apparently was overlooked by the parties in *Mountain Defense League, supra.* ■ ■■■ The decision itself has no application here since it involved a simultaneous approval of a private development plan and the court held that in such a situation where only one decision is made applicable to both the general plan amendment and the private plan, the appropriate scope of review is Code of Civil Procedure section 1094.5[6]

## SECTION 65300.5

■ Having determined that the appropriate scope of review is under Code of Civil Procedure section 1085, we next determine whether that specified review is qualified in any mandatory way by section 65300.5. Certainly there is no direct language in the section which supports appellant's position. It is clearly a general statement of policy, and

---

[5]The record reflects that subsequent action was taken at the time of the application for permit in 1978 as to the Longo parcel.

[6]In further support of his position appellant has called to the court's attention the recent decision of *Arnel Development Co.* v. *Costa Mesa,* (Cal.App.) filed on November 9, 1979, which held that an initiative which purported to rezone specific parcels of land was invalid as not a proper subject for initiative action because it was quasi-judicial in nature and not quasi-legislative. For the reasons set forth it is not appropriate to apply an analogy to zoning changes under the circumstances presented here. Furthermore, it is no longer the law inasmuch as petition for hearing was granted by the Supreme Court on December 27, 1979 (L.A. 31205). (*People* v. *Shuey,* 13 Cal.3d 835, 840 [120 Cal.Rptr. 83, 533 P.2d 211].)

no one is arguing that it should not be considered in the execution of general plans and amendments thereto. But it is no more than that, and there is nothing to indicate a legislative intent that it modifies the applicable scope of review. The very reason for this limited review under Code of Civil Procedure section 1085 is to avoid the precise type of rigidity for which appellant argues by seeking to incorporate section 65300.5 in some mandatory fashion into the review. ■ The judgment decision rests with the city council and will not be set aside unless the council acted arbitrarily, capriciously or without any evidentiary basis. (See *City of Santa Cruz* v. *Local Agency Formation Com.*, 76 Cal.App.3d 381, 393 [142 Cal.Rptr. 873].)

■ The record presented does not support a conclusion that the city council acted arbitrarily or capriciously or without any evidence or in violation of section 65300.5. The affidavit of the city planner presents a point-by-point analysis of the two amendments with reference to their relationship to the elements of the general plan. It is not correct to challenge it as lacking in factual presentation. A review of the record presented, including the EIRs, shows that the city council had before it for consideration the impact of the proposed changes on the elements of the plan. The EIRs constitute evidence. (*City of Carmel-by-the-Sea* v. *Board of Supervisors*, 71 Cal.App.3d 84, 94 [139 Cal.Rptr. 214].) By adopting the amendments, the city council indicated its acceptance of the opinions favoring the amendments as generally consistent with the general plan despite some potentially slight variations. Obviously, the fact that the Legislature provided for amendments of a general plan indicates that it recognized the need for review, updating and correcting. The general plan itself specifically contemplates that it be treated as a dynamic document subject to change and reconsideration.[7]

---

[7]THE PLANNING PROCESS

"Planning is the continuous process of guiding land development in accordance with established policy and towards predetermined goals and objectives. It represents a conscious effort to shape the physical environment for the welfare of those who live and work in the community.

"The forces which direct the course of development are constantly changing. Improvements in technology, living and educational standards, as well as changes in Community opinion and in economic influences are constantly at work. Thus, the General Plan must also change after periodic review in order to reflect the Community's current thinking. To be of usable value, the Plan must be as dynamic as the Community it represents.

"The original General Plan for the City of Camarillo was prepared in 1969. Now, as numerous changes have taken place and are continuing to do so, so must the General Plan change...."

As to the Longo parcel, the evidence establishes that this particular area posed a special problem for the City, which it attempted to solve in adopting 77-2. Because of the creek, the road and freeway, it is a pocket area. Prior to the adoption of the general plan it was zoned for residential use. It was concededly not that suitable for agricultural purposes. In returning it to low density housing, the City was in effect solving several problems. It was providing for population growth and housing needs, and using what was a marginal agricultural area to accomplish this. In arriving at this decision it had to balance objectives and this required adjustments within the plan. But the procedure which it followed and the judgment which it exercised appropriately considered the relevant elements of the plan.

It is correct that there would result a reduction in open space. This inevitably flows from the decision. Nevertheless, park and school sites were required to mitigate this loss. It is argued that there will be increased pressure for urbanization; no doubt the opponent's concern over the pressure which might occur to change adjacent agricultural parcels is genuine. However, such imagined consequences can be reviewed appropriately when and if the need arises because of future proposals or zoning changes. It is correct that an objective of the plan is to lessen pollution. It is a misreading of the goal to suggest that any increase is forbidden. The goal only requires that the problem be addressed. Here it clearly was. The record reflects that there may be some slight increase in air pollution. However, the availability of job opportunity in the nearby industrial park also suggests a mitigation by reason of possible reduction in automobile use. There is advanced the criticism that the change leads to urban sprawl and leapfrogging of development and spotty community development because of uncontained urbanization. The City analyzed the change in relation to the physical facts and adjacent uses as an in-fill. No problem of utility services is posed so physical separation from other housing areas is not that significant from an efficiency point of view. While one can argue that the mobile home park is different than a residential housing development (the former may have less school needs), it is also correct to visualize the park as a housing area with many needs and demands comparable to those of an adjacent housing development. It is contended that the council action will produce mutual nuisances between agricultural and residential uses and that true separation corridors are absent. The evidence showed that the council addressed these considerations and took steps to meet them apart from the separation provided by existing physical features. It pro-

vided for retention of the creek, including a landscaped buffer along the westerly boundary and the installation of a trail system, plus a land-scaped buffer adjacent to Pleasant Valley Road along the southerly and easterly boundaries. Additionally, sound walls are contemplated. When considered with the desirability of the total amendment, the City's efforts are not assailable on this score.

Unlike the Longo parcel, the White parcel is well-suited to prime agricultural use. The consideration of the City was the establishment of an activity sufficiently related to agriculture to warrant reduction of open agricultural space. It was decided that there was a need to promote agricultural products of the community, and it was determined that a specialized commercial enterprise would accomplish this as a whole. Much of what has been stated with regard to the Lango parcel is relevant to White. More particularly, the change contemplated that land surrounding the commercial enterprise be kept agricultural exclusively; this rejects the claim of pressure arising for additional encroachment upon adjacent lands, and in the event that situation should arise, that would be the appropriate time to challenge the extension.

Appellant seeks to substantiate his position by referring to the subsequent positions of three of the planning commissioners in 1978, when the permit application for the Longo parcel was being considered. For different reasons, each refused to approve any change in the Longo parcel from agricultural use. This referral to the subsequent viewpoints of certain planning commissioners only indicates that the City officials were having a difficult time responding to the appropriate use to be made of this particular parcel. An affidavit presented by appellant's own witness conceded this. As the city council saw the situation at the time of the adoption of the amendment 77-2 in 1977, the area south of the freeway if sufficiently protected by buffer zones and design provisions, and considering that services were or would be available for residential use, and that it was not desirable agricultural lands, that school needs would be met and that more housing was needed, elected to make the necessary change in the general plan. ■ A difference of opinion, no matter how strongly presented, does not warrant a rejection of the City's action where it has been demonstrated that the City was presented with opposing viewpoints, considered them extensively and on the basis of evidence selected one alternative rather than another. This cannot be the basis of a charge that the City acted arbitrarily or capri-

ciously or without evidentiary support. Under the circumstances presented here no basis exists for judicial interference.

These arguments were selected by appellant as his major points. General references to other alleged inconsistencies in the superior court are answerable in the same fashion, and it would be unduly repetitive to consider them in detail. If the court were to follow the approach of the appellant, it would be substituting its judgment for that of the proper and authorized authority, and this it cannot do in a quasi-legislative review.

EIRs

Appellant has extended his argument concerning section 65300.5 to a challenge of the EIRs prepared and submitted to the city council. ■ Where the adequacy of an EIR is questioned, it is independently reviewable on appeal from the agency action. (*City of Rancho Palos Verdes* v. *City Council*, 59 Cal.App.3d 869, 890 [129 Cal.Rptr. 173].) The scope of review is fixed by statute as follows: (Pub. Resources Code, § 21168.5.) "In any action or proceeding, other than an action or proceeding under Section 21168, to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."

In reviewing an EIR a paramount consideration is the right of the public to be informed in such a way that it can intelligently weigh the environmental consequences of any contemplated action and have an appropriate voice in the formulation of any decision. But the following principles must also be considered. The EIR is not an action document. Its purpose is to inform governmental decision makers and to focus the political process upon their action affecting the environment. (*City of Rancho Palos Verdes* v. *City Council, supra*, 59 Cal.App.3d 869, 890.) ■ The regulations adopted to implement the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) are designed as "guidelines" (Cal. Admin. Code, tit. 14, § 15001 et seq.).[8] This term was obviously very carefully selected. They are indications or outlines to be followed, allowing for flexibility of action and conduct of

[8]Henceforth all reference to regulations are to title 14 unless otherwise indicated.

governmental agencies faced with what are frequently complex and difficult decisions which could affect the environment. They are distinguishable from standards which frequently require a rigid and precise application according to legislative intent. The guidelines themselves make this clear. Environmental documents are useful planning tools. (§ 15013.) The guidelines have only general application to the diversity of projects undertaken or approved by public agencies. (§ 15013.) The degree of specificity in an EIR will correspond to the degree of specificity involved in the underlying activity which is described in the EIR. (§ 15147.) "An EIR should be prepared with a sufficient degree of analysis to provide decision makers with information which enables them to make a decision which intelligently takes account of environmental consequences. An evaluation...need not be exhaustive....Disagreement among experts does not make an EIR inadequate. The courts have looked not for perfection but for adequacy, completeness, and a good faith effort at full disclosure." (§ 15150.) Even where specific guidelines have been urged upon the courts as requiring a narrow and restricted approach by the governmental agency, the courts have followed the general tenor of the guidelines, indicating that they are subject to a construction of reasonableness and the court will not seek to impose unreasonable extremes or to inject itself within the area of discretion as to the choice of action to be taken. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees,* 89 Cal.App.3d 286, 287 [152 Cal.Rptr. 585].)

Notwithstanding, the appellant ignores those portions of the guidelines and the judicial imprint thereon calling for reasonableness in interpretation, and seeks selectively from them to support his arguments of inadequacy of the EIRs.[9]

█ He argues that conformity between the general plan and the projects was not examined in the EIRs. It is true that the EIRs do not address this on an aligned point by point analysis. However, the general plan in many of its aspects is concerned with environmental impact. The EIRs emphasize the environmental impact of the amendments; this is their purpose and to this extent it is shared in common with the general plan. As long as this purpose is carried out, there is no need in the

---

[9]It is interesting to note that his own witness in commenting on EIR 77-6 stated: "EIR 77-6 (Longo-Mission-Camarillo) is a well prepared document that adequately and accurately points out environmental impacts of the proposed project." This same witness, while he presented opposition to 77-3, voiced no objection to the EIR, but only commented on the substance of the proposal.

EIRs to refer to any particular goal or objective of the general plan. There is nothing in the law or the guidelines which requires such a specific consideration. To impose it as a requirement would be to exalt form over substance, and in substance the analysis in the EIRs and the relation to the general plan is readily discernable.[10]

Appellant argues that there is no factual basis to support the EIRs, and that no weight should be given to the affidavit of the city planner. That affidavit contained a point by point analysis of the EIRs with reference to the general plan and the amendments. While much of it is opinion, this entire area is subject to opinion testimony. The facts on which the affidavit is based are found in the exhibits introduced even through an incomplete record was produced by appellant. It is no more subject to criticism on this score than the affidavits produced by appellant and his witness. Appellant's affidavits showed only that the adoption of the amendments posed a difficult problem, and that there were other ways of evaluating the evidence in the light of the desired objectives of the general plan. Nor is the affidavit of the city planner subject to attack on the ground of credibility any more than those submitted by the appellant, which are equally subject to the charge of bias and interest.

Appellant cites regulations 15143 and 15146 and argues that the EIRs must not only describe reasonable alternatives but must also state why they were rejected in favor of the ultimate decision, and that they must contain specific responses to suggestions received and to rejection of suggestions. Other alternatives were proposed and considered and specific responses were included. Appellant refers to one suggested by the county agricultural commissioner who opposed the amendment dealing with the White parcel. That individual gave no factual basis to support his suggestion of an alternative location. The staff in response identified his statement as a very general one, which required no specific answer, and the court agrees that the staff's characterization is a fair one. Nevertheless, the staff agreed with the commissioner that alternative sites should be considered and the EIR specifically referred to one which did exist. No more was required, and appellant's con-

---

[10]The broader aspects of a general plan are impliedly recognized in regulation 15012 which in pertinent part states: "While EIRA requires that major considerations be given to preventing environmental damage, it is recognized that public agencies have obligations to balance other public objections, including economic and social factors in determining whether and how a project should be approved."

tention is answered by the decision in *City of Rancho Palos Verdes* v. *City Council, supra,* 59 Cal.App.3d 869, which discusses an appropriate interpretation of these guidelines: "What is required is that the EIR give reasonable consideration to alternatives in light of the nature of the project and that those alternatives be described in sufficient detail to serve the informational purpose of the report to the governmental body which will act and the public which will respond to the action through the political process." (59 Cal.App.3d at p. 892.) It is not required "that the body acting on an EIR correctly solve a dispute among experts." All that is required is that in substance the material in the EIR be responsive to the opposition, particularly where opinion and not fact is in issue. (*City of Rancho Palos Verdes* v. *City Council, supra,* 59 Cal. App.3d at pp. 894-895.) The reduction of agricultural use in preference to residential and commercial use and the location of the proposed changes in preference to other locations was presented to the council through the EIRs with sufficient analysis and appropriate responses to meet the requirements of the guidelines.

Lastly, appellant argues that no statement or finding was made that the public benefit was served. He concedes no finding is required where a legislative function is being performed. Neither is a statement. It is clear from the record produced that the matter of public benefit was clearly before the council through the EIRs and other information, and the record supports the conclusion that by its action after due consideration the council determined that the public benefit was being served. (*City of Rancho Palos Verdes* v. *City Council,* 59 Cal.App.3d 869, 891 [129 Cal.Rptr. 173].)

Appellant's reference to regulation 15801[11] is not appropriate to the review requested in this case. Here we are dealing with a review of an amendment to a general plan and a review of an EIR as a "useful tool" for the city council in carrying out its responsibilities. Regulation 15801 is concerned with whether a project will have "significant effects" on the environment. Its relevance is only to the issue of whether the preparation of an EIR is sufficient or a "negative declaration" is required. That issue is not presented in this case.

---

[11]"(a) The determination of whether a project may have a significant effect on the environment calls for careful judgment on the part of the public agency involved, ...There may be a difference of opinion on whether a particular effect should be considered adverse or beneficial, but where there is, or anticipated to be, a substantial body of opinion that considers or will consider the effect to be adverse, the lead agency should prepare an EIR to explore the environmental effects involved.

"15083. Negative Declaration. (a) General. A Negative Declaration shall be pre-

## SECTION 65361

 Appellant also attacks the amendment 77-3 as being adopted in violation of the law. In the first instance he argues that since 77-3 related to two parcels, neither of which had any relation to the other, and since two prior amendments had been adopted in 1977, the council had exceeded the allowed limit of three. In its original form section 65361 permitted general plan amendments without limitation as to number. In 1974 it was amended to contain the present limitation of three annual amendments. There is no language in the section which deals with any concept other than numbers and mandatory elements. If the Legislature had intended other limitations such as suggested by appellant relating to parcel numbers it would have been a simple matter for it to indicate this by narrowing the scope of subject matter, or the number or size of parcels. There is no evidence of legislative intent or public policy to warrant the construction suggested by appellant. Both sides agree that the rationale behind the 1974 amendment is one of promoting public participation in the amendment process. This is accomplished by limiting the number of times a year amendments could be considered, and through the limitation to insure a reasonable opportunity for people to be represented and heard. This policy is not thwarted by permitting consideration of more than one parcel in an amendment of an element of a general plan. By keeping the number of appearances down, the burden occasioned by too frequent addressing of problems is reduced. No valid reason has been advanced for construing the clear language of the section in any way other than to limit the number of occasions in each year on which amendments can be considered.

## SECTION 65356

Neither was section 65356 violated. The question presented is whether deletion of a parcel from a planning commissioner recommendation on an amendment to a general plan constitutes a "change" within the meaning of the section. We hold that where the parcel deleted is in no way connected with the remaining parcel or parcels as to which the amendment is adopted so that the latter are unchanged, section 65356 has no application. The obvious purpose for requiring that the

---

pared for a project which could potentially have a significant effect on the environment, but which the Lead Agency finds on the basis of an Initial Study will not have a significant effect on the environment."

matter be sent back to the planning commission is to present it with the opportunity to review the effect of the change upon its position and prior recommendations. Where the parcel considerations are not related in any way and are totally independent of each other, as in the case here, so that they can be considered without regard of one to the other or others, no purpose is served by returning the entire matter to the planning commission. There is nothing for it to reconsider, and because the matters are independent of each other, no basis for changing recommendations as to undeleted parcels.

The analogy to almost identical language appearing in former Government Code section 65655 is too striking to be ignored. That section provided: "The legislative body shall not make a change in any proposed precise plan, regulation, or amendment thereto recommended by the Planning Commission until the proposed change has been referred to the Planning Commission for a report and a copy of the report has been filed with the legislative body." In *Millbrae Assn. for Residential Survival* v. *City of Millbrae*, 262 Cal.App.2d 222 at pages 233-235 [69 Cal.Rptr. 251], it was held that where a planning commission had recommended the rezoning of eight parcels, and a city council decided to rezone only one of the parcels, the city council did not "make a change in" the proposed amendment. The city council could have rezoned all eight parcels and simply chose to enact an ordinance of lesser scope than that which it might have enacted. That case is controlling here. In this respect the analogy between zoning and a general plan amendment is valid because the similarity of language indicates a legislative intent common to both governmental functions.

The record provided in this case was sufficient to apprise the court of the basis for the action taken by the city council. From this record we conclude that in adopting the amendments to the general plan, it did not act arbitrarily or capriciously or without evidentiary support, but rather, that it acted within the scope of its authority and not in violation of the law. The judgment is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied January 29, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 10, 1980. Newman, J., was of the opinion that the petition should be granted.