[Civ. No. 58910. Second Dist., Div. Two. Dec. 23, 1980.]

CHARLES BOWNDS, Plaintiff and Appellant v.
CITY OF GLENDALE et al., Defendants and Respondents;
STEVENSON-DILBECK DEVELOPMENT COMPANY, etc., et al.,
Real Parties in Interest and Respondents.

876

COUNSEL

Jones & Jones and Arthur T. Jones for Plaintiff and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, R. H. Connett, Assistant Attorney General, Daniel P. Selmi, Sylvia O. Cano, Deputy Attorneys General, and Carlyle W. Hall, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Frank R. Manzano, City Attorney, and Peter C. Wright, Assistant City Attorney, for Defendants and Respondents.

Roger A. Grable, City Attorney (Irvine), William H. Keiser, Assistant City Attorney, Leonard A. Hampel and Rutan & Tucker as Amici Curiae on behalf of Defendants and Respondents.

Melby & Anderson, Jarrett Anderson, Selvin & Weiner, Beryl Weiner, Morton C. Devor, Alan I. White, Philip W. Green and Drummy, Garrett, King & Harrison for Real Parties in Interest and Respondents.

OPINION

**COMPTON, J.**—Proceedings in mandamus to compel the City Council of the City of Glendale (City), inter alia, to vacate and set aside all approvals granted subsequent to July 20, 1978, for the conversion of existing apartment houses to condominium ownership and to declare a moratorium on such conversions pending certain actions by the City in the area of planning which, according to petitioner, are required by law.

The State Department of Housing and Community Development (Department) and the Sierra Club have filed amicus curiae briefs in support of petitioner. An amicus brief in support of City and real parties in interest has been filed on behalf of the City of Irvine and 45 other California cities.

Petitioner is a tenant in an apartment building which was approved by City on July 20, 1978, for conversion to condominium ownership. In this action he purports to represent an unincorporated association of tenants who are similarly situated.

The real parties in interest are owners of apartment buildings who, subsequent to July 20, 1978, have applied for and received approval for conversion to condominiums. The trial court entered judgment denying the petition for mandate. Petitioner has appealed. We affirm.

Code of Civil Procedure section 1085 provides that a writ of mandate may be issued to compel a public official to perform an act which the law specifically requires him to perform. Petitioner contends that City is required by law and should be mandated to perfect what he describes as an "inadequate" general plan and that the failure to take such action renders the City powerless to approve condominium conversions. Hence, according to petitioner, such previously granted approvals must be vacated.

While the immediate goal of petitioner is to prevent the accomplishment of a number of specific condominium conversion projects, the fundamental issue involved is the decision-making power in the area of land use and planning.

Land use regulation in California has historically been a function of local government under the grant of police power contained in California Constitution, article XI, section 7.[1] The exercise of that power has traditionally been accomplished through zoning ordinances and regulation of subdivisions under the Subdivision Map Act (formerly Bus. & Prof. Code, § 11500 et seq., now Gov. Code, §§ 66410 through 66499.30).

---

[1]California Constitution, article XI, section 7 provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

■ In recent years the Legislature has enacted a number of statutes as part of the State Planning and Zoning Law, (Gov. Code, § 65000 et seq.) the combined effect of which is to require that cities and counties adopt a general plan for the future development, configuration and character of the city or county and require that future land use decisions be made in harmony with that general plan.

The general plan is required to contain elements dealing with specific areas such as housing, land use and circulation. (Gov. Code, § 65302.) Subdivision map approval and zoning decisions must be consistent with the general plan. (Gov. Code, §§ 66473.5, 66479 and 65860.)

The Department is authorized to develop and publish guidelines for the preparation of the housing element of the plan (Gov. Code, § 65040.2; Health & Saf. Code, § 50459) and the Office of Planning and Research is authorized to do the same for other elements of the plan (Gov. Code, § 65040.2). The Department's guidelines were promulgated in 1973 and codified in California Administrative Code, title 25, sections 6300 through 6350.

Except for mandating the development of a plan, specifying the elements to be included in the plan, and imposing on the cities and counties the general requirement that land use decisions be guided by that plan, the Legislature has not preempted the decision making power of local legislative bodies as to the specific contours of the general plan or actions taken thereunder.

As we will discuss, petitioner's contentions in this case, as supported by amicus curiae, if accepted, would result in that decision making power being usurped by the Department or the courts.

These contentions are that the guidelines promulgated by the Department are binding on local governments and have the force of law and that the courts should assume the role of determining the "adequacy" with which a local plan addresses all of the various societal factors.

The thrust of the statutory scheme embodied in the state planning and zoning law is to insure that decisions made by local governmental entities, which affect future growth of their communities, will be the result of considered judgment in which due consideration is given to the various interrelated elements of community life. The statutes make clear, however, that local control is at the heart of process.

Government Code section 65030.1 provides in part: "The Legislature also finds that decisions involving the future growth of the state, *most of which are made and will continue to be made at the local level,* should be *guided* by an effective planning process, including the local general plan, and should proceed within the *framework* of officially approved statewide goals and policies. . . to land use, population growth and distribution, development, open space, resource preservation and utilization, air and water quality, and other related physical, social and economic development factors." (Italics added.)

Government Code section 66411 provides in part: "Regulation and control of the design and improvement of subdivisions are vested in the legislative bodies of local agencies. *Each local agency shall by ordinance, regulate and control subdivisions for which this division requires a tentative and final or parcel map. . . .*" (Italics added.)

The general plan which a city or county is required to adopt is simply a statement of policy. A general plan or policy, whether it be adopted by governmental entity or private organization serves to provide a standing consistent answer to recurring questions and to act as a guide for specific plans or programs. (*O'Loane* v. *O'Rourke* (1965) 231 Cal. App.2d 774 [42 Cal.Rptr. 283].)

Here the City has adopted a master plan and the housing element, which became mandatory by virtue of an amendment to Government Code section 65302, subdivision (c), effective January 1, 1972, was completed by mid-1975. That element was undergoing study and revision commencing in early 1978 and a revision was adopted August 1, 1978. The instant action was not commenced until August 21, 1978.

Since 1954, City has also had an ordinance regulating the design and construction of all phases of subdivision development. In December of 1978, it adopted a specific ordinance dealing with condominium development which is applicable to both new development and conversions.

 Petitioner's contention is that the City ordinance regulating condominium conversion is invalid and that any approval of such conversions pursuant thereto is void because the housing element of the *general plan* is "inadequate." The argument goes that any subdivision regulation, including regulation of condominium conversion, cannot be consistent with the general plan as required by Government Code sec-

. . .

tions 66473.5[2] and 66474,[3] if the general plan itself is defective or inadequate.

Both petitioner and amicus rely heavily on *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64 [141 Cal.Rptr. 282]. In that case the Court of Appeal invalidated a city's approval of a subdivision map because the court determined that the city had adopted neither a general plan nor a local open space plan. It was there held that a subdivision could not be consistent with a nonexistent plan.

Here, there is no question but what the City of Glendale has adopted a general plan with all of the required elements. The claim is simply that, according to petitioner, it is "inadequate" because the housing element of the plan does not discuss in specific terms the subject of condominium conversion and that it does not comport with the Department's guidelines, which, in our opinion, are nothing more than the Department's interpretation of the Legislature's desires. We think it important to note that with one exception neither the statutes themselves nor the guidelines make any specific mention of condominium conversion.

While condominiums, since their recent advent in California, have been treated as subdivisions of airspace and thus subject to the same general type of regulation as traditional land subdivision, it is apparent that conversion of an existing apartment building to condominium ownership does not involve the land use considerations inherent in the traditional land subdivision.

In obvious recognition of this distinction the Legislature has exempted condominium conversions from certain requirements applicable to

---

[2]Government Code section 66473.5 reads as follows: "No local agency shall approve a map unless the legislative body shall find that the proposed subdivision, together with the provisions for its design and improvement, is consistent with the general plan required by Article 5 (commencing with Section 65300) of Chapter 3 of Division 1 of this title, or any specific plan adopted pursuant to Article 8 (commencing with Section 65450) of Chapter 3 of Division 1 of this title. ¶ A proposed subdivision shall be consistent with a general plan or a specific plan only if the local agency has officially adopted such a plan and the proposed subdivision or land use is compatible with the objectives, policies, general land uses and programs specified in such a plan."

[3]Government Code section 66474 reads in part as follows: "A legislative body of a city or county shall deny approval of a final or tentative map if it makes any of the following findings: (a) That the proposed map is not consistent with applicable general and specific plans. (b) That the design or improvement of the proposed subdivision is not consistent with applicable general and specific plans."

other types of subdivisions. Government Code section 66427.2 provides that condominium conversions, which do not include the addition of new units, are *not* required to be consonant with the general plan unless that plan contains "definite objectives and policies" relating thereto.

Government Code section 66427, a part of the Subdivision Map Act, exempts condominium projects from a requirement of providing detailed maps of the building being subdivided.

Petitioner and the Department concede that an otherwise adequate general plan need not contain any reference to condominium conversions because such silence implies a finding that conversions pose no obstacle to implementation of the general plan and to require such reference and the procedure that would flow therefrom would be simply a bureaucratic exercise.

What then is the basis for the claim that the City's plan is not otherwise adequate? In short, it is that the City's plan fails to comport with the Department's guidelines which it interprets as requiring an exhaustive inventory of available housing and an "action" program to insure adequate housing for all economic segments of the community, and which in light of the housing situation in Glendale, must necessarily include reference to the subject of condominium conversions.

The trial court found, on the basis of evidence presented, that the plan, and more specifically the housing element, was adequate and that no special conditions existed which would make it mandatory for the City to include specific provisions concerning condominium conversions. The trial court also found that in each case the approval of the specific conversion project was consistent with the general plan.

The actions of the City are presumed to be valid and a regular performance of official duty. The burden is on petitioner to demonstrate that the City has failed to perform a specific duty mandated by law.

Planning is at best an inexact science. General plans or policy statements are often semantical exercises which require considerable interpretation on the part of persons charged with implementing them.

In the area of planning and land use the Legislature has promulgated its own general policies and mandated that local governments in turn adopt plans which comport with the Legislature's policies.

Absent a complete failure or at least substantial failure on the part of a local governmental agency to adopt a plan which approximates the Legislature's expressed desires, the courts are ill-equipped to determine whether the language used in a local plan is "adequate" to achieve the broad general goals of the Legislature. ■ In short, while a court, such as in *Save El Toro Assn.* v. *Days, supra*, 74 Cal.App.3d 64, may conclude that in form and general content, a local plan fails to meet the general requirements of the statute, a court cannot and should not involve itself in a detailed analysis of whether the elements of the plan are adequate to achieve its purpose. To do so would involve the court in the writing of the plan. That issue is one for determination by the political process and not by the judicial process.

A perfect example of the problem is presented in this case. Government Code section 65302, subdivision (c) states in part that the housing element should contain ". . . standards and plans for the improvement of housing and for provision of adequate sites for housing. This element of the plan shall make adequate provision for the housing needs of all economic segments of the community. Such element shall consider all aspects of current housing technology, to include provisions for not only site-built housing, but also manufactured housing, including mobile-homes and modular homes."

Petitioner and the Department interpret that language as requiring the cities and counties to affirmatively plan in terms of "who, what and when" for the *creation* of housing. Implicit in this is the requirement of the expenditure of public funds for the purpose. The City contends there is no legislative mandate to affirmatively acquire or produce housing.

In the absence of more specific legislation, it would ill-behoove any court to indirectly mandate such a specific "action" program under the guise of declaring an otherwise complete and comprehensive plan to be inadequate, basing its decision on nothing more than a subjective interpretation of such nonspecific language.

■ Contrary to the contention of petitioner, we conclude that the housing element of the City's master plan contains an extremely comprehensive analysis of the present housing inventory and future needs. The City's overall plan and its ordinances in the area of land use regulation represent an honest and reasonable effort to comply with the state's statutory requirements.

Finally, we turn to the contention that the guidelines promulgated by the department have the effect of law, are binding on the cities and counties and thereby limit the legislative prerogative of the city councils and boards of supervisors.

In our opinion, this is a startling concept indeed. As noted earlier, planning guidelines are developed by two bodies under two separate statutory authorizations. Government Code section 65040.2 specifically provides that the guidelines promulgated by the Office of Planning and Research are advisory only.

Health and Safety Code section 50459, which provides for the authority of the Department to promulgate guidelines concerning the housing element in local planning, does not, however, specifically declare such guidelines to be advisory only. The statute does, however, authorize that department to review local housing elements for conformity with Government Code section 65302 and *report its findings.* The clear implication is that the Department has no authority on its own to compel compliance according to its own notion of what constitutes compliance. The term "guidelines" itself suggests an absence of compulsion.

To carry the argument to its logical extreme, if the Department could promulgate regulations or guidelines having the effect of law it could simply adopt a regulation banning all condominium conversions or spelling out the Department's own regulatory scheme. Further, the Department could, according to its interpretation of the statute, require public funding for housing developments.

In regulating condominium conversion or, in fact, in regulating land use generally, the police power is in direct confrontation with article I, section 1 of the California Constitution (right to acquire or possess property) and article I, section 19 (prohibition against the taking of private property without just compensation). In areas of such critical importance and sensitivity as impairing private property rights and mandating the expenditure of public funds, a delegation of legislative authority to an administrative agency would violate the doctrine of separation of powers, article III, section 3 and would be invalid.

In summary, the decision making power in the area of land use and planning still rests with the local governmental agencies to be exercised within the constraints prescribed by enactments of the state

Legislature. When any attack is made upon the exercise of that decision making power and the adequacy of the general plan within which it is to be exercised, a presumption of validity attaches to the actions of the local governmental agency.

Guidelines promulgated by the Department are not self-executing and do not have the binding effect of law. The subject of conversion of condominiums is of such importance to property owners and tenants alike that the authority of the local government to regulate in the area should not hinge upon subjective interpretation by courts or administrative boards of the vague or general language to be found in the planning and land use law. If the Legislature desires to preempt the decision making power of local governments in the field, it should specifically say so.

Our conclusion is borne out by the fact that since the commencement of this action, the Legislature has enacted Assem. Bill No. 2853, which amends Government Code section 65302 and adds article 10.6 to chapter 3 of division 1 of title 7 of the Government Code.

The effect of this legislation is to codify many of the provisions of the Department's former guidelines, and to require compliance by October 1, 1981. The new enactment specifically provides that any guidelines or findings adopted by the Department are advisory only, and that judicial review of a local plan be limited to a determination of whether there is "reasonable compliance" with the statutes.

This indicates to us a recognition by the Legislature that the Department's guidelines have always been advisory only, that any such drastic impairment of the legislative prerogative of local government should be undertaken only by specific legislative action and judicial review for compliance be limited in scope.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Petitions for a rehearing were denied January 9, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1981.