[Civ. No. 68931. Second Dist., Div. One. Mar. 21, 1984.]

KATHARINE EILEEN GREENEBAUM et al.,
Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
PAUL CHEN et al., Real Parties in Interest and Respondents.

**COUNSEL**

Katharine Eileen Greenebaum, in pro. per., and for Plaintiffs and Appellants.

Ira Reiner, City Attorney, Gary R. Netzer, Assistant City Attorney, Claudia McGee Henry and Sharon L. Siedorf, Deputy City Attorneys, for Defendants and Respondents.

C. Richard Dodson for Real Parties in Interest and Respondents.

---

**OPINION**

**GUTIERREZ, J.**\*—A petition for a writ of mandate was filed by tenants of an apartment building located at 514-524 South Barrington Avenue in the City of Los Angeles. The City of Los Angeles had approved tentative tract No. 39860, proposed by the real party in interest, for the construction of 24 new condominium units on the Barrington property.

After appearing and being heard at various administrative hearings regarding the proposed development, the tenants brought the instant lawsuit to overturn the approval of the tentative tract map. This is an appeal from a judgment by the superior court in favor of respondents denying the petition of writ of mandate and upholding the action of the Los Angeles City Council.

### STATEMENT OF FACTS

On March 3, 1980, an application for a tentative tract map was filed with the Department of City Planning for the City of Los Angeles (Department), pursuant to Los Angeles Municipal Code section 17.00 et seq. The applicant proposed to build a 24-unit condominium development and demolish the existing 12-unit building on South Barrington Avenue in the City of Los Angeles.

The project site is located on the east side of Barrington Avenue, south of Sunset Boulevard in an area of multiple-family dwellings. The adopted Brentwood-Pacific Palisades District Plan designates the subject property for medium residential density (24 to 40 dwelling-units per gross acre) with a corresponding zone of R3. The subject property contains .60 gross acres and is presently zoned R3/1.

The environmental review committee determined that the proposed development would not have a significant effect on the environment and issued a conditional negative declaration for the proposed tract map. This com-

---

\*Assigned by the Chairperson of the Judicial Council.

mittee concluded "that no significant impacts are apparent which might result from this project's implementation." Notice of the pending application and environmental clearance was mailed to the tenants and surrounding property owners on April 11, 1980, pursuant to Los Angeles Municipal Code section 17.06A6. A public hearing was held by the deputy advisory agency on April 30, 1980. The appellants were given an opportunity to present their opposition to the proposed development. On June 4, 1980, the deputy advisory agency approved tentative tract No. 39860 and certified the conditional negative declaration.

A timely appeal to the city planning commission (Commission) from the decision of the deputy advisory agency was filed by appellants. A hearing on the appeal was held on July 17, 1980. Appellants were present and gave testimony at the hearing. The commission continued the matter to its meeting of July 24, 1980, at which time they suspended the proceedings and remanded the matter to the environmental review committee to reconsider its previous action. A revised conditional negative declaration was issued on July 30, 1980. The appeal was again considered by the commission on September 18, 1980. At that time, appellants were again permitted to present their views. The commission failed to act by a two-to-two vote which left intact the action of the deputy advisory agency.

An appeal was then filed by appellants to the Los Angeles City Council (City Council) on October 3, 1980. The planning and environmental committee of the City Council (Committee) held public hearings on the appeal on October 21, and 28 of 1980. The appellants were present at the hearings and explained the basis of their appeal. After due consideration, the committee concurred in the decision of the deputy advisory agency and recommended denial of the appeal.

The appeal was heard by the entire City Council on October 30, 1980. After hearing testimony from appellants and a representative of the developer, the City Council determined that the project needed an environmental impact report (EIR) and continued the matter for the purpose of preparing an EIR to address the cumulative effect of the demolition of the existing apartments on the rental housing market.

On January 7, 1981, appellants submitted a series of comments to the Department detailing the areas that the EIR should address. In December of 1981, a draft EIR (DEIR) was circulated to appellants and other interested persons and agencies for their comments. Appellants submitted written comments regarding the DEIR on January 18, 1982. After reviewing and responding to these and other comments, a proposed final EIR was circulated in February of 1982.

On February 26, 1982, the appeal on tentative tract map No. 39860 and the proposed final EIR was before the City Council. After hearing testimony from the appellants and others, the City Council referred the matter back to the Committee for consideration of the proposed EIR.

The Committee held a public hearing on the proposed EIR on March 9, 1982. Appellants once again spoke at the hearing and presented their views on the sufficiency of the proposed final EIR. The Committee voted unanimously to certify the proposed final EIR, to uphold the decision of the deputy advisory agency to approve the tract map, to modify some of the conditions to the original approval, and to adopt the findings of June 4, 1980, as the City Council's findings.

The appeal then went back before the City Council on March 12, 1982. A public hearing was held and once again appellants were present and were given an opportunity to present their opposition to both the proposed final EIR and the tentative tract map. The City Council then certified the final EIR, adopted the statement of overriding considerations, denied the appeal, and adopted the findings and modified conditions to the tentative tract map approval which were recommended by the committee.

On April 19, 1982, appellant filed a petition for writ of mandate seeking to set aside the City Council's approval of tentative tract No. 39860. The superior court denied the petition. Plaintiffs appeal.

## CONTENTIONS

Appellants contend that the City Council did not review and consider the EIR as mandated by the CEQA, but rather only adopted the recommendations of the deputy advisory agency.

They also argue that they did not receive a "fair hearing" on the approval of the tract because they claim the City Council acted in an arbitrary and capricious manner.

Appellants further aver that the decision of the City Council is inconsistent with the city's housing element and the Brentwood Community Plan and that therefore the City Council abused its discretion in not denying the tentative map.

Finally, they claim that the EIR is inaccurate and inadequate and thus should not have been the basis for approval of the tentative tract map.

DISCUSSION

I

*Standard for the Trial Court's Review of the City Council's Decision*

California Code of Civil Procedure section 1094.5 deals with the inquiry into the validity of an administrative order or decision. Section 1094.5 states in part: "(b) *The inquiry . . . shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.* [¶] (c) *Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.*" (Italics added.)

Neither party disputes the applicability of Code of Civil Procedure section 1094.5 to this inquiry into the validity of the City Council's decision.

 In the leading case on the issue, *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12], Justice Tobriner, speaking for a unanimous court, noted that the "Code of Civil Procedure section 1094.5 [is] the state's administrative mandamus provision which structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies." Moreover, in this controlling opinion, he held that a reviewing court "must scrutinize the record and determine whether substantial evidence supports the administrative agency's findings and whether these findings support the agency's decision. In making these determinations, the reviewing court must resolve reasonable doubts in favor of the administrative findings and decision." (*Id.,* at p. 514.)

 Appellants assert that the independent judgment test is the proper test since, they argue, their rights are fundamental rights. These rights, they urge, are "fundamental ones because it is a very basic right—that of having the security of knowing that you will have a roof over your head." In support of their contention, appellants cite *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 518, footnote 18 [113

Cal.Rptr. 539], for the proposition that: "in light of *Bixby* and *Strumsky,* the matter is open for question as to whether the legislature could 'validly prescribe the substantial evidence scope of review as it has done in Sections 21168 and 21168.5.'" Sections 21168 and 21168.5 are code sections under the California Environmental Quality Act (CEQA) of the Public Resources Code. These sections mandate the use of the substantial evidence test when dealing with a question of review of a public agency decision under CEQA and when inquiring, in a proceeding under CEQA, into a possible prejudicial abuse of discretion.

The passage quoted by appellants, although accurate, is misleading because the case did not find a fundamental right at issue under its facts nor did it imply that situations arising under sections 21168 and 21168.5 would be likely to involve fundamental rights. In fact, in context, the court was merely pointing out an "intriguing question" which they mentioned as dicta in the footnote. (*Friends of Lake Arrowhead* v. *Board of Supervisors, supra,* 38 Cal.App.3d 497, 818, fn. 18.)

Appellants have conceded in their opening brief that usually rights which are deemed "fundamental" are either constitutional or statutory in nature. The right claimed by appellants "that of having the security of knowing that you will have a roof over your head," is certainly not of constitutional dimensions. Further, as noted above, the statutes do not elevate this "right" to the level of a fundamental right. Therefore, the independent judgment test would *not* be applicable to this case.

In *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 181-182 [131 Cal.Rptr. 462], as in this case, the appellant was requesting review of the city council's approval of a tentative tract map. The court followed the controlling *Topanga* decision when it held, "[t]he function of an appellate court in cases like this is to determine whether (1) the findings of the agency or local governmental body (hereafter 'agency') are legally sufficient, and (2) whether the findings are supported by substantial evidence and support the agency's decision."

Thus, the trial court was correct in finding that the standard used in reviewing the City Council's approval of the respondent's tentative tract map was to determine if there was substantial evidence to support the findings of the City Council and if those findings support the decision.

Finally, when applying the substantial evidence test, "Courts may reverse an agency's decision only if, *based on the evidence before the agency,* a reasonable person could not reach the conclusion reached by the agen-

cy." (*McMillan* v. *American Gen. Fin. Corp., supra,* 60 Cal.App.3d 175, 186.) (Italics in original.)

## II

*The Standard to Be Used by the Court of Appeal in Reviewing the Trial Court's Decision*

■ *McMillan* v. *American Gen. Fin. Cor., supra,* 60 Cal.App.3d 175, 182 states, in regard to the Court of Appeal's standard of review, that, "it is axiomatic that our inquiry (as was the trial court's) is limited by the substantial evidence rule to the record made before the city council. [Citations.]"

Additionally, the case of *Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723, 728 [135 Cal.Rptr. 588], held: "When the independent judgment rule applies, the trial court makes its own independent findings, and review on appeal is directed to whether there is substantial evidence to support the court's findings. [Citation.] On the other hand, *if the substantial evidence test applies, both the trial and appellate courts limit their review to the question of whether the agency's findings were supported by substantial evidence.* [Citation.]" (Italics added.)

Thus, since the substantial evidence rule applies to review of the City Council's decision by the trial court in this case, we are limited to determining whether the City Council's findings were supported by substantial evidence.

## III

*The City Council Reviewed and Considered the Environmental Impact Report as Required by the CEQA*

Title 14, California Administrative Code, section 15090 states that the "lead agency" (here the City Council), "[s]hall certify that: (a) The final [Environmental Impact Report (hereafter EIR)] has been completed in compliance with CEQA; and [¶] (b) The final EIR was presented to the decision-making body of the lead agency and that the decision-making body *reviewed and considered* the information contained in the final EIR prior to approving the project.*"* (Italics added.)

■ The appellants assert that the City Council did not review and consider the EIR but instead improperly delegated the responsibility to the planning department's deputy advisory agency. The City Council, they claim,

merely adopted the recommendations of the agency without first reviewing and considering the EIR independently. They assert that this can be inferred because the City Council did not comment upon appellants' objections to the EIR in its findings. This claim is not substantiated by the facts. On March 12, 1982, when the City Council took their final action in denying the appeal, they specifically adopted two reports. The first was the report of the planning and environmental committee which was a short summary of the appeal, the EIR, comments on the EIR and some responses to the comments. The second report adopted was the EIR which was also certified by the City Council as having been reviewed and considered. The EIR which was adopted was the final EIR and it included specific reference to each of appellants' major criticisms and detailed responses to those criticisms. The City Council is not required to repeat each comment on the EIR and their response to it in writing.

In addition, many of appellants' complaints and comments about the EIR were addressed in the public hearings which appellants invariably attended and at which the City Council heard and commented upon the criticisms raised.

Appellants' reliance on the case of *Kleist* v. *City of Glendale* (1976) 56 Cal.App.3d 770 [128 Cal.Rptr. 781] is misplaced. The *Kleist* case, decided by this court, involved a situation in which a city ordinance improperly allowed the city council to delegate its responsibility (to review and consider the EIR) to an administrative agency which dealt with environment and planning. Moreover, the actual minutes of the Glendale City Council meeting during which the action in question was taken, contained no discussion or debate on the EIR whatsoever. Even though all the council members had received copies of the EIR, only one councilman made even a general reference to environmental factors in relation to the ordinance. Under these circumstances, the *Kleist* court, held that it was not required to draw the inference that a city council reviewed and considered an EIR simply because it received copies of the EIR and then later acted on the ordinance.

This case can be distinguished from the *Kleist* case, in that here, the City Council itself was charged with the responsibility to review and consider the EIR. Not only did the members of the City Council each receive copies of the draft, the proposed and the final EIRs, but also there were numerous hearings before both the full City Council and the planning and environment committee (which is comprised of City Council members). Moreover, this City Council, in direct contrast to the Glendale City Council in *Kleist,* voted to certify the finding that they had, "reviewed and considered the information in the final EIR" and also, that the EIR had been "completed in compliance with the CEQA of 1970 and the State's and City's Guidelines."

The trial court found that there was sufficient evidence to conclude that the City Council had not abused its discretion and that it had complied with the requirement that it "review and consider" the evidence. Since the Court of Appeal, in reviewing the decision of the lower court, may inquire only whether the trial court abused its discretion in making its decision, the standard, thus, to determine if discretion has been abused, is whether there was substantial evidence sufficient to support the finding of the court.

In the case at bar, the trial court had substantial evidence to support its finding that the City Council properly reviewed and considered the EIR as required by the CEQA.

## IV

*Appellants Received a Fair Hearing*

■ Appellants charge that the City Council's decision was arbitrary and capricious in granting approval of the project and that therefore they did not receive a "fair hearing." Thus, they charge, the agency committed an abuse of discretion and appeal from such abuse can be made pursuant to Code of Civil Procedure section 1094.5.

As previously noted, Code of Civil Procedure section 1094.5 provides for inquiry into the validity of an administrative order or decision. The inquiry "shall extend to the questions [among other things] . . . whether there was a fair trial."

Appellants state that they are not arguing that they were not given an opportunity to speak before the City Council, but they "do argue that they were not given a fair hearing because the City acted in an arbitrary and capricious manner." Appellants' basis for asserting that the City Council acted in an arbitrary and capricious manner is that on the same day on which the City Council approved respondents' tentative tract map it disapproved another project in the Brentwood area (hereafter Montana Tract). Appellants argue that both projects were based upon the same EIR and that the projects were essentially identical. Therefore, if both projects were actually based upon the same information but opposite decisions were forthcoming, then, they urge, the only reasonable answer is that the City Council acted arbitrarily and capriciously in reaching different decisions.

In support of this premise, appellants argue that the EIR prepared for this property (the Barrington Tract) was utilized in making the decision on the other property (the Montana Tract). That EIR was one of the factors which accounted for the denial of the tract map on the Montana Tract.

Appellants quote from the EIR in their opening brief as follows: "The existing vacancy rate in the Brentwood-Pacific Palisades District Plan area, in which this tentative tract is located, is 2.15 per cent. [¶] An Environmental Impact Report, EIR No. 143-80-SUB, has been prepared by the Environmental Review Section of the Planning Department in connection with a similar tract in this area, Tract 39860 for a condominium at 514-524 Barrington Avenue and submitted it to the Council for review and consideration. That EIR has it shown that in the Brentwood area there has been an extreme trend toward condominium development. The analysis in the EIR clearly shows an approximate 36% decrease in the total rental stock if all pending approved tentative tracts are developed as proposed. This is based on data gathered from August, 1978. Condominiums had begun replacing rental units prior to that time, and stock cooperative conversions were not counted, so the total impact is higher than 36%, and will (sic) over 40%."

Appellants note that when disapproving the Montana Tract, the City Council spoke of this data in its findings and yet, when approving the Barrington Tract, spoke of other data (which was also before the City Council) which noted that "Between December 1978 and December 1980, the total rental housing in Brentwood has decreased by 18 percent." Since appellants argue that the properties are essentially identical, they urge that the only explanation for the difference in decisions by the City Council and the use of different data in its findings is that the City Council acted arbitrarily and capriciously.

Appellants' argument is not well taken because the City Council had before it much more information than appellants illustrate. Respondents and the real party in interest had placed before the City Council information which illuminated the differences between the two properties. The following are examples of some differences: The Montana Tract had 14 units which were 26 years old. These were to be replaced by a 21-unit condominium. There were three senior citizens in the building and there was opposition to the project not only from the tenants of the building but also from the Brentwood Homeowners Association. The Barrington Tract consisted of 12 units which were 32 years old. Five of the tenants in the Barrington Tract opposed the project at the time the City Council made its decision and as of the appeal all of the units except those five were vacant. There was no opposition to the project by the Brentwood Homeowners Association, nor was there any opposition to the project (other than those five tenants) when the City Council denied the appeal.

Even though the EIR prepared for the Barrington Tract was also used when making the decision on the Montana Tract, the tracts were not iden-

tical. The City Council had two projects with some similar information, some identical information (the EIR) and some different information. The fact that the City Council arrived at different decisions concerning the two tracts cannot be characterized as arbitrary and capricious.

Appellants' other contention that they did not receive a fair hearing because of the allegation of an attempt to extort a bribe from the developer in exchange for not opposing the tentative tract approval, is equally without merit. Although various City Council members did comment on this allegation, nevertheless, *it is apparent from a review of the entire record that this allegation was set aside and that the final determination by the City Council was based on the substantial merits of the project.*

V

*The Tract Map Was in Compliance With the General Plan and Thus Complied With the Subdivision Map Act*

Government Code section 66473.5 requires a finding by a local agency of consistency with a general or specific plan. It states in part: "No local agency shall approve a tentative map, . . . unless the legislative body shall find that the proposed subdivision, together with the provisions for its design and improvement, is consistent with the general plan . . . or any specific plan adopted. . . . [¶] A proposed subdivision shall be consistent with a general plan or a specific plan only if the local agency has officially adopted *such a plan and the proposed subdivision or land use is compatible with the objectives, policies, general land uses and programs specified in such a plan.*"

 Respondent urges that an exact match between the Subdivision Map Act and the tentative tract map is not intended by the Legislature. The respondent city also argues that *the requirement is only that the tentative map be in agreement or harmony with the general or specific plan.*

The case of *Bownds v. City of Glendale* (1980) 113 Cal.App.3d 875, 881 [170 Cal.Rptr. 342], supports that position when it noted: "The general plan which a city or county is required to adopt is simply a statement of policy. A general plan or policy, whether it be adopted by governmental entity or private organization serves to provide a standing consistent answer to recurring questions and to act as a *guide* for specific plans or programs. [Citation.]" (Italics added.)

The *Bownds* case, *supra,* 113 Cal.App.3d 875, 881 was factually similar to this case in that a tenant, who lived in an apartment building which had

been approved for condominium conversion by the city, brought proceedings in mandamus to compel the city to vacate and set aside the approval of the project. Although, the case focused on the consistency and adequacy of the city's general plan in relation to that required by the state rather than, as here, the consistency and adequacy of the project with the city's general plan, the court discussed many of the same issues. The *Bownds* court discussed the topic of "guidelines" in relation to the housing element of a general plan for the City of Glendale, and held: "Finally, we turn to the contention that the guidelines promulgated by the department have the effect of law, are binding on the cities and counties and thereby limit the legislative prerogative of the city councils and boards of supervisors. [¶] In our opinion, this is a startling concept indeed. . . . [¶] . . . The term 'guidelines' itself suggests an absence of compulsion. [¶] . . . In summary, the decisionmaking power in the area of land use and planning still rests with the local governmental agencies to be exercised within the constraints prescribed by enactments of the state Legislature. When any attack is made upon the exercise of that decisionmaking power and the adequacy of the general plan within which it is to be exercised, a presumption of validity attaches to the actions of the local governmental agency." (*Id.*, at pp. 885-886.)

■ Appellants, on the other hand, urge that the decision of the City Council is inconsistent with the city's housing element and with the Brentwood Community Plan and therefore the City Council abused its discretion in not denying the tentative map. They also argue that the trial court misinterpreted the data before the City Council and thus also erred in finding the tract to be in conformance with the subdivision map act. Appellants cite several code sections to support their argument. These code sections actually illustrate the advisory or guiding nature of the elements of the general plan. The fact that they are guidelines rather than prerequisites, however, is more supportive of respondents' argument than that of appellants.

Although Government Code section 65302 states that the city's general plan "shall" include a "housing element" it does not specify how exacting that element must be. The section illustrates further the advisory nature by stating that there are four major "goals". "Goals" by definition are *not* prerequisites for complying with the "housing element" requirement. Appellants concede that the housing element "[i]s intended . . . [t]o also serve as a *guide* for action by the city council in evaluating public and private development with respect to meeting housing needs." (Italics added.)

Thus, in regard to whether the tract map was consistent with the general plan, there was conflicting evidence before the City Council and when conflicting evidence is present, "[i]t is for the agency to weigh the preponder-

ance of conflicting evidence. [Citation.] Courts may reverse the agency's decision only if, *based on the evidence before the agency,* a reasonable person could not reach the conclusion reached by the agency." (*McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 186.) (Italics in original.)

Additionally, in compliance with the standard enunciated by this court (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856]), the City Council issued an express finding that the proposed subdivision tract map was consistent with the district plan prior to its approval of the proposed tract. The trial court, as noted above, could reverse the agency's decision only, if based on the evidence before the agency, a reasonable person could not have reached the same conclusion. The City Council's decision, although based on conflicting evidence, was reasonable and within its discretion, and was supported by its findings which were based on substantial evidence. Based upon the evidence before the agency, the trial court correctly refused to reverse the agency's decision.

■ The standard of review for the appellate court is as quoted earlier from the seminal case of *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 132-133 [40 Cal.Rptr. 171]: "The function of an appellate court is to determine whether the evidence, viewed in the light most favorable to the respondent, sustains the findings subject to review, resolving any reasonable doubts in favor of those findings. [Citation.] In making this determination the appellate court must resolve all conflicts in the evidence in favor of the judgment or decision of the tribunal below and indulge in all legitimate and reasonable inferences to support it. [Citations.] Insofar as the appellate court itself is concerned, the substantial evidence rule obtains whether it is reviewing the findings of the trial court where the latter has exercised independent judgment, or whether the findings involve the decision of an agency or board where the trial court is not authorized by law to exercise its independent judgment. In the former situation, the appellate court is confined to the evidence received by the trial court; in the latter case it is limited to the evidence in the record before such agency or board. [Citation.]"

■ In making its decision, the agency had much information before it, including all of the data which appellants assert is important. When reviewing the findings of the agency, the trial court properly resolved all conflicts consistent with the decision and indulged all legitimate and reasonable inferences to support the findings. It, thus, correctly held that the findings were supported by substantial evidence and that the decision was supported by the findings.

VI

*Adequacy of EIR*

Appellants contend that the EIR is inaccurate and inadequate based on four allegations. They claim the EIR (1) does not accurately follow the state guidelines on cumulative adverse impact, (2) does not adequately consider traffic and parking problems, (3) does not adequately discuss the alleged inconsistencies between the project and the general plan, and (4) fails to provide sufficient information on which to base an intelligent decision.

Title 14, Administrative Code section 15151 discusses the standards to be used when assessing the adequacy of an EIR. It says: "An EIR should be prepared with a sufficient degree of analysis to provide decision makers with information which enables them to make a decision which intelligently takes account of environmental consequences. An evaluation of the environmental effects of a proposed project need not be exhaustive, but the sufficiency of an EIR is to be reviewed in light of what is reasonably feasible. Disagreement among experts does not make an EIR inadequate, but the EIR should summarize the main points of disagreement among the experts. The courts have looked not for perfection but for adequacy, completeness, and a good faith effort at full disclosure."

Appellants also argue that consistent with *Karlson v. City of Camarillo* (1980) 100 Cal.App.3d 789 [161 Cal.Rptr. 260] the trial court should have independently reviewed the adequacy of the EIR. However, *Karlson* is distinguishable from this case. In *Karlson,* the appellant was denied his petition for writ of mandate. He requested the trial court to set aside two amendments to the city's general plan because they were internally inconsistent in violation of Government Code section 65300.5 (which required internal consistency within the plan). The appellate court held that the agency action was reviewable under Code of Civil Procedure section 1085, which governs grounds for proper issuance of the writ. Code of Civil Procedure section 1085 states in part: "It may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right . . . to which he is entitled, . . ."

However, appellants concede that the action they bring is reviewable subject to Code of Civil Procedure section 1094.5 which governs the issuance of a writ for an inquiry into the validity of a final administrative order or decision. As previously noted, Code of Civil Procedure section 1094.5 subdivision (a) governs: "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as a

result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, . . ."

Public Resources Code section 21168 (California Environmental Quality Act), applicable under Code of Civil Procedure section 1094.5, states that: "Any action or proceeding to attack, review, set aside, void or annul a determination, finding or decision of a public agency, made as a result of a *proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency,* on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure. [¶] In any such action, *the court* shall not exercise its independent judgment on the evidence but *shall only determine whether the act or decision is supported by substantial evidence in the light of the whole record."* (Italics added.)

Although *Karlson* notes that where the adequacy of an EIR is questioned, it is independently reviewable on appeal from the agency action, it also notes that the scope of review in that case is Public Resources Code section 21168.5 which concerns actions or proceedings *other* than those under section 21168; in other words, actions or proceedings which were not *"made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency . . . ."* (Pub. Resources Code, § 21168 (italics added); see also *Rural Land Owners Assn.* v. *City Council* (1983) 143 Cal.App.3d 1013 [192 Cal.Rptr. 325].) Here, although the adequacy of the EIR is being questioned, it is questioned only in the sense that it is one portion of a whole proceeding in which, by law, a hearing was required to be given, evidence was required to be taken and discretion in the determination of facts was vested in the public agency. Therefore, the reasoning of the respondents in this regard is more favored. On review the decision of the trial court will be upheld if supported by substantial evidence.

■■■ The question is, however, one of little relevance to this particular case, because even if the evidence provided in the EIR is judged on an independent basis, the EIR is nonetheless adequate.

Appellants' main contention in regard to the adequacy of the EIR is that the EIR does not "accurately follow the State Guidelines in its discussion of the cumulative adverse impact that demolitions and conversions have had on the rental market in Brentwood." They note that the state guidelines list three elements which are necessary to an adequate discussion of cumulative impacts. They are (1) a list of projects producing related or cumulative

impacts, including those projects outside the control of the agency, (2) a summary of the expected environmental effects to be produced by those projects with specific reference to additional information where that information is available, and (3) a reasonable analysis of the cumulative impacts of the relevant projects. Further, they quote the guidelines as saying, "[s]pecific reference to related projects, both public and private, both existent and planned, in the region should also be included, for purposes of examining the possible cumulative impact of such projects. . . . The EIR shall discuss any inconsistencies between the proposed project and the applicable general plans and regional plans."

The EIR has exhaustively set out all of the requirements of the state guidelines including (1) a list of 93 related projects having potential cumulative impacts, (2) a 4-page analysis which summarizes the adverse environmental impacts (including the cumulative impacts of the relevant projects), the recommended mitigation measures and any unmitigated adverse impacts, and (3) an 11-page analysis and discussion including final comments upon, among other things, appellants' criticisms of the alleged inconsistencies between the project and the applicable general plan and regional plan, and the alleged miscalculation of the data used in the EIR.

Appellants argue that the EIR only considers the adverse cumulative effect of demolitions and conversions between December 1978 and December 1980, and thus does not accurately measure the project's adverse impact on the loss or rental units in the area. The final EIR addresses appellants' concerns on an individual basis and comments upon each of them, and notes that all of the addresses which appellants claim were omitted from the project were checked, considered and nevertheless, the planning commission maintains that the figures and impact estimates were correct.

The court in *Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 285 [152 Cal.Rptr. 585], approved the language of *Environmental Defense Fund* v. *Corps of Eng., U.S. Army* (8th Cir. 1972) 470 F.2d 289, 297. The court in the *Environmental Defense Fund* case was discussing possible error in EIR statistics when it noted: "'[i]t is doubtful that any agency, however objective, however sincere, however well-staffed, and however well-financed, could come up with a perfect environmental impact statement in connection with any major project. Further studies, evaluations and analyses by experts are almost certain to reveal inadequacies or deficiencies. But even such deficiencies and inadequacies, discovered after the fact, can be brought to the attention of the decision-makers, . . .' [Citations.]"

The court in *Residents Ad Hoc Stadium Com., supra,* 89 Cal.App.3d 274, holding that the EIR was adequate against a claim by appellants that it was,

at most, a post hoc rationalization of the project, discussed the differences between its fact pattern and that of the *Environmental Defense Fund* case, *supra.* In response to the *Ad Hoc* appellants' claim that all the information considered must be in the EIR report (as did appellants in this case), they noted: "The statement in *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 706 [104 Cal.Rptr. 197], that 'It should be understood that whatever is required to be considered in an EIR must be in that formal report; what any official might have known from other writings or oral presentations cannot supply what is lacking in the report [citation]' is a correct statement of the law but is not applicable to this proceeding. In *Environmental Defense Fund, Inc.* and *Green County Planning Board,* the decision-makers certified the EIR as adequate and decided to proceed with the project without conducting a public hearing at which objections to the EIR and the project could be presented and considered. Here, the Trustees were totally solicitous of public opinion and delayed their decision until a hearing was held at which all interested persons could voice their reaction to the EIR. . . . The comments were incorporated in the EIR, and the Trustees did, in fact, take a 'hard look' at all presented environmental consequences of the proposed stadium. [¶] . . . Absolute perfection is not required; what is required is the production of information sufficient to permit a reasonable choice of alternatives so far as environmental aspects are concerned. It is only required that the officials and agencies make an objective, good faith effort to comply. . . . [T]he court does not seek to impose unreasonable extremes or to interject itself within the area of discretion as to the choice of the action to be taken. [Citations.]" (*Id.,* at pp. 285, 286, 287.)

Since appellants do not assert that they were not allowed to present their objections to the agency, their complaint essentially is a disapproval of the method of calculating the figures used in the EIR. Since the committee had been apprised of appellants' claim regarding the proper method of calculating the rental loss, and it had accounted for all of the properties cited by appellants, it was not an abuse of discretion to give more weight to one set of "experts" than to another.

 The court in *Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 805 [161 Cal.Rptr. 260], held: "'An EIR should be prepared with a sufficient degree of analysis to provide decisionmakers with information which enables them to make a decision which intelligently takes account of environmental consequences. An evaluation . . . need not be exhaustive. . . . *Disagreement among experts does not make an EIR inadequate.* The courts have looked not for perfection but for adequacy, completeness, and a good faith effort at full disclosure. [§ 15150.]'" (Italics added.)

 Here, the city planning department officers do qualify as experts since this type of analysis is their business. Even giving the appellants the benefit of the doubt and assuming that they may have had an expert compile and analyze their data for them, the fact that there are differing opinions arising from the same pool of information is not grounds for holding the EIR inadequate. It is clear that both sides had the same information because the appellants gave to the Department, the Commission, and the Committee their analyses and comments on this issue. Then the Department and the Committee and the City Council specifically responded to the appellants' charges with the city's analysis and comments. They did this both orally at public hearings and in written communications and documents.

 Therefore, as noted in *Karlson* (*supra,* at p. 807) quoting from *City of Rancho Palos Verdes* v. *City Council* (1976) 59 Cal.App.3d 869, 892 [129 Cal.Rptr. 173], "[i]t is not required 'that the body acting on an EIR correctly solve a dispute among experts.' All that is required is that in substance the material in the EIR be responsive to the opposition, particularly where opinion and not fact is in issue. [Citation.]"

 Furthermore, even if it is assumed that the figures were inaccurate, the Commission, the Committee, and the full City Council, had all of the data before them when reviewing and considering the information on the project, including the EIR, and appellants' comments to it and the Committee's responses to the comments, before making their decision. Thus, the City Council had substantial evidence to support its findings when deciding on the project. Where, as here, the evidence was conflicting, the City Council was permitted to give more weight to some of the evidence and to favor the opinions and estimates of some of the experts over the others.

Appellants' argument as to the differing data and opinions on the issues of parking and circulation in the area follows the same rationale as above. There was conflicting evidence and conflicting opinion and thus, the City Council was entitled to choose to believe one side more than the other. "[D]isagreements among experts do not require the invalidation of an EIR. [Citations.]" (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 594 [122 Cal.Rptr. 100].)

Appellants' final argument regarding the adequacy of the EIR is that it fails to discuss inconsistencies between the tentative tract map and the general plan or specific plan as mandated by the Subdivision Map Act. As previously discussed, the City Council issued an express finding that the tentative tract map *was consistent* with the district plan before approving the tract. Since it has been determined that there was substantial evidence

to support that finding, the City Council's decision and findings remain undisturbed. Therefore, this contention of appellants is without merit.

In summary, the City Council considered and reviewed the EIR's (draft, proposed and final), and conducted extensive public hearings on the project at which appellants were permitted to testify. The City Council considered the comments along with their Committee's responses to those comments, and finally the City Council made a decision based upon all of the evidence as well as expert opinions on the subject. The decision properly certified the final EIR, adopted a statement of overriding considerations, denied the appeal and adopted the findings and modified conditions to the tentative tract map approval which were recommended by the Committee. The findings properly "bridge[d] the analytic gap between the raw evidence and ultimate decision or order" (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12]) which findings were supported by substantial evidence.

During oral argument, appellants again urged that since the trial judge said that the EIR was inaccurate, he should have found it to be inadequate. While the trial judge is quoted in the transcript as stating "I don't think that the EIR is accurate," it is evident from a careful reading of the entire record that the trial judge did find the EIR to be adequate. The reasoning in *Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274 [152 Cal.Rptr. 585] supports the trial court's reasoning that an EIR deficient in one minor respect may be nonetheless adequate in its entirety especially when, as here, the trial court finds "that it [the City Council] reviewed the EIR and fully considered it . . ." and "that the City Council did estimate their project's impact on the area . . ." and then concluded that the decision of the City Council was supported by the findings.

After oral argument, appellants directed the court's attention to the case of *San Franciscans for Reasonable Growth* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 61 [198 Cal.Rptr. 634]. (Hereinafter *SFRG.*)

In that case the court found the EIR to be inadequate based upon a finding that in calculating the cumulative impacts the commission did not include in its analysis other related projects currently under environmental review. The commission acknowledged 16.2 million square feet of new development but analyzed only 6.3 million. The court found that the EIR thus did not reflect the true severity and significance of the impact on the environment. "The disparity between what was considered and what was known is the basis upon which we find an abuse of discretion." (*Id.,* at p. 77.) We agree with the *SFRG* court that "[a]n omission of such magnitude inevitably renders an analysis of cumulative impacts inaccurate and inadequate because

the severity and significance of the impacts will perforce, be gravely understated." (*Id.* at pp. 77-78.) We also agree that " '[t]he discussion of cumulative impacts should be guided by a standard of practicality and reasonableness.' " (*Id.*, at p. 72.) As pointed out in footnote 18, "[w]e are also mindful of the fact that, under section 15023.5 of the Guidelines, a cumulative analysis need not provide as great detail as the analysis of the direct impacts of the project being evaluated in the EIR. (Guidelines, § 15023.5, subd. (c).) However, we do not consider the omission of up to 60 percent of the projects that should have been analyzed in the cumulative analyses to be merely a problem of insufficient details." (*Id.*, at p. 81.)

In the case at hand, the alleged underestimation of the decreased rental housing was insignificant when viewing the EIR as a whole, and thus did not provide a basis to conclude that the EIR was inadequate. ". . . [A]n EIR need not be exhaustive; . . . its sufficiency must be reviewed in light of what is reasonably feasible; and . . . we should look for adequacy and completeness, not perfection." (*Id.*, at pp. 80-81.)

In conclusion, the trial court, as detailed above had substantial evidence on which to base its decision, and properly found that the City Council's decision was supported by substantial evidence and affirmed its decision.

The judgment is affirmed. The temporary stay order is hereby vacated.

Spencer, P. J., and Dalsimer, J., concurred.

A petition for a rehearing was denied April 19, 1984, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1984.